CREATIVE TILE MARKETING, INC.,
a Florida corporation, Plaintiff,

v.

SICIS INTERNATIONAL, S.r.L.,
a foreign corporation,
Defendant.

No. 95–492–CIV.

United States District Court,
S.D. Florida,
Miami Division.

April 3, 1996.

Stephen J. Kolski, Jr., Catlin, Saxon, Tuttle and Evans, P.A., Miami, FL, for Plaintiff.

Richard J. Ovelmen, Mary K. Weidmeier, Baker & McKenzie, P.A., Miami, FL, for Defendant.

## OMNIBUS ORDER

MOORE, District Judge.

THIS CAUSE came before the Court upon (1) Plaintiff's Motion for Default Judgment on the Issue of Liability and for Reservation of Jurisdiction to Determine Damages (DE #4); (2) Defendant's Motion to Compel Arbitration and Stay Proceedings (DE #5); and (3) Defendant's Motion for Reconsideration of State Court Order, and Renewed Motion to Compel Arbitration, and to Stay Proceedings (DE #12).

THE COURT has considered the Motions, responses, and the pertinent portions of the record, and being otherwise fully advised in the premises, it enters the following Order.

## PROCEDURAL BACKGROUND

On September 15, 1993, Plaintiff Creative Tile Marketing, Inc. ("Creative Tile") com-

menced an action in the Circuit Court for the Eleventh Judicial Circuit in Dade County against Defendant SICIS International, S.r.L. ("SICIS") for breach of contract and for an accounting. On or about November 10, 1993, Defendant filed a motion to dismiss the complaint for lack of personal and subject matter jurisdiction and to quash service of process and motion for extension of time to file supporting affidavit. By Order dated April 20, 1994, Judge Norman S. Gerstein entered an agreed partial order denying Defendant's motion to quash service of process, motion to dismiss for lack of long arm jurisdiction, and motion to dismiss for insufficient minimum contacts with the state of Florida. On December 13, 1994, Judge Gerstein entered an order denying the remainder of the issues raised in Defendant's November 10, 1993 motion to dismiss, and directed Defendant to file and serve an answer to Plaintiff's complaint within twenty (20) days of the date of the Order. Defendant did not file an answer, but filed a motion for extension of time on December 30, 1994. On January 12, 1995, Defendant filed a notice of interlocutory appeal.

On March 10, 1995, Defendant filed a notice of removal of this action, and this action was removed to this Court. At the time Defendant filed its notice of removal, Defendant's motion for an extension of time to answer the complaint was still pending. On March 24, 1995, Plaintiff filed a motion for default judgment in this Court. Upon receiving the motion for default, Defendant filed a motion to compel arbitration and stay proceedings. Defendant filed a second motion to compel shortly thereafter.

### FACTUAL BACKGROUND

Plaintiff Creative Tile Marketing, Inc. ("CTM") is a Florida marketing corporation. Defendant SICIS International, S.r.L. ("SICIS") is an Italian corporation in the business of manufacturing mosaic tiles. In December 1990, the parties entered into an agency agreement, whereby SICIS appointed CTM the exclusive agent in several countries, including the United States, Canada, Caribbean Islands, Japan, Singapore, Australia, Taiwan, and Hong Kong, to sell SICIS'

tile products. Pursuant to the agency agreement, SICIS was entitled to accept and execute orders received directly from customers in CTM's exclusive territory. If SICIS accepted and executed these orders, SICIS was obligated to pay CTM a commission for all sales within CTM's territory. In December 1991, the parties entered into an amended agency agreement, which amended the exclusive agency territory to the United States, Puerto Rico, Canada, and South America.

CTM alleges that, in November 1990, SICIS wrongfully terminated the agency agreement as it applied to Japan. Further, CTM alleges that, on June 2, 1992, SICIS wrongfully gave notice of its intent to terminate the agency agreement in its entirety. In its four-count complaint, CTM alleges that, as a result of SICIS' breaches of the agency agreement, CTM is entitled to commissions for sales consummated by SICIS in CTM's exclusive territory.

### DISCUSSION

### I. Plaintiff's Motion for Default Judgment

█ Two weeks after Defendant SICIS removed the instant matter to this Court, Plaintiff CTM filed a motion for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. It is the general rule that default judgments are ordinarily disfavored because cases should be decided upon their merits whenever reasonably possible. However, the entry of a default judgment is committed to the discretion of the district court. *Hamm v. DeKalb County,* 774 F.2d 1567, 1576 (11th Cir.1985), *cert. denied,* 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). In determining whether a default judgment is appropriate, a court may consider several factors including: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir.

1986) (citing 6 Moore's Federal Practice, ¶ 55–05[2], at 24–26).

Plaintiff argues that it is entitled to entry of default judgment for three reasons: (1) Defendant ignored Judge Gerstein's order that Defendant file and serve an answer to Plaintiff's complaint; (2) Defendant failed to comply with Rule 55 which requires a defendant to answer or otherwise defend a complaint; and (3) Defendant failed to comply with Rule 81, which requires a Defendant to answer or present other defenses or objections within five (5) days after filing a petition for removal.

■ Defendant acknowledges that it failed to timely answer the complaint or raise objections after removing this case to this Court but argues that the Court should excuse Defendant's dilatory conduct. The Court agrees with Defendant and concludes that Defendant's default constitutes excusable neglect. Defendant has not been totally non-responsive in this case; in state court, Defendant acted in a timely fashion and zealously litigated this case. Further, Defendant's default does not appear to be willful. Defendant alleges that it believed its motion for an enlargement of time to answer Plaintiff's complaint, which was still pending when the case was removed, was operative in this Court. Further, upon receiving Plaintiff's motion for default, Defendant immediately acted by filing a motion to compel arbitration.[1] Defendant also has meritorious defenses to Plaintiff's claims and adjudication on the merits is warranted in light of the damages, believed to be in excess of $300,-000.00, sought by Plaintiff. Finally, Plaintiff has not been prejudiced by Defendant's two

week delay. Accordingly, the Court denies Plaintiff's motion for default.[2]

## II. Defendant's motion to compel arbitration; Defendant's motion for reconsideration of the state court order and renewed motion to compel arbitration

■ Defendant has filed a motion for reconsideration of the state court's order to the extent that it denied Defendant's motion to compel arbitration.[3] Reconsideration is proper since, upon removal, a district court may dissolve or modify injunctions, orders, and all other proceedings which took place in state court. *See Maseda v. Honda Motor Co., Ltd.*, 861 F.2d 1248, 1252 (11th Cir.1988) (citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 437, 94 S.Ct. 1113, 1123, 39 L.Ed.2d 435 (1974); *Ex parte Fisk*, 113 U.S. 713, 5 S.Ct. 724, 28 L.Ed. 1117 (1885); 28 U.S.C. § 1450).

### A. Characterization of the Parties' Dispute

■ Before this Court discusses whether arbitration is appropriate, the Court must address two preliminary issues which will determine the applicable contractual provisions in the instant matter. First, this Court must ascertain whether, as Plaintiff contends, the parties' dispute is merely a "commission dispute." If the instant action is merely a "commissions dispute," then Article 3(3) of the parties' agency agreement is applicable; otherwise, Article 12 is applicable. A review of Plaintiff's complaint reveals that, despite Plaintiff's characterization, this case is more than a commissions dispute. This is an action for wrongful termination of the agency agreement, and Plaintiff seeks a de-

---

1. While a motion to compel arbitration is not included in the ambit of Rule 12(b) motions that suffice as responsive pleadings in lieu of answers, courts traditionally have entertained certain types of pre-answer motions—such as a motion to compel arbitration and stay proceedings—not specifically provided for in the Federal Rules of Civil Procedures. *See Smith v. Pay–Fone Systems, Inc.*, 627 F.Supp. 121, 122 (N.D.Ga.1985).

2. However, the Court notes that Defendant has failed to adhere to the Federal Rules of Civil Procedure in several respects and finds that Plaintiff is entitled to an award of costs and

attorney's fees incurred in filing its motion for default judgment.

3. Defendant does not seek reconsideration of the other points raised in its motion to dismiss. However, the Court notes that Defendant contends that it "appears specially" in this court without waiving objections to, among other things, personal jurisdiction. Since Defendant's motion to dismiss for lack of personal jurisdiction was dismissed pursuant to an *agreed* order, this Court finds that Defendant consented to personal jurisdiction.

termination of the parties' rights and obligations under the agreement. Accordingly, Article 12 of the agency agreement is the applicable provision in the instant matter.

### B. Forum Selection Clause

■ Based on the above characterization, the Court must determine whether this action should be dismissed for improper venue. Although the parties have not briefed this issue, the Court notes that Article 12 of the agency agreement, provides, in pertinent part, that "all disputes arising from or connected with this Agreement, except those referred to Article 3, sub 3, shall fall within the jurisdiction of the competent judge of *47023 Ronta Cesena, Italy.*" Article 12 is a forum selection clause.

In *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 2, 92 S.Ct. 1907, 1909, 32 L.Ed.2d 513 (1972), the Supreme Court held that a mandatory forum selection clause is prima facie valid. However, unlike the forum selection clause in *M/S Bremen,* the forum selection clause in the instant action is not mandatory. It is permissive. *See, e.g., Caldas & Sons, Inc. v. Willingham,* 17 F.3d 123, 127–128 (5th Cir.1994); *Hunt Wesson Foods, Inc. v. Supreme Oil Co.,* 817 F.2d 75, 77–78 (9th Cir.1987). The Court's conclusion is based on the finding that, unlike forum selection clauses which have been held to be mandatory, the clause in the instant action does not provide that the Italian court shall have "exclusive jurisdiction." *See, e.g., Caldas & Sons,* 17 F.3d at 127 (the court noted that the use of the word "shall" did not mean that the forum selection clause was mandatory); *Hunt Wesson Foods,* 817 F.2d at 77 (the court indicated that mandatory forum selection clauses generally contain words such as "exclusive jurisdiction"). Further, it appears that the effect of the forum selection clause in the instant matter is to confer jurisdiction over CTM, a Florida corporation, in an Italian court. Accordingly, since the forum selection clause is permissive and this is a proper forum, the Court retains jurisdiction over the matter and turns to the question of whether arbitration is warranted in the instant matter.

### C. Arbitration

Defendant seeks to compel arbitration on the basis that the parties' agency agreement contains two arbitration provisions. Specifically, Article 12 of the parties' agency agreement provides:

> Without prejudice to the Principal's right to summon the Agent before the judge competent at Agent's domicile, all disputes arising from or connected with this Agreement, except those referred to in Article 3, sub. 3, shall fall within the jurisdiction of the competent judge of *47023 Ronta Cesena, Italy.*
>
> This Agreement is construed and is to be interpreted in accordance with the law of the *Italian Republic,* however, all disputes that arise from the operation of this Agreement, shall be submitted to an international arbitration committee in Geneva, Switzerland or other mutually acceptable forum.

Article 3(3) provides:

> Any dispute about the amount of commission which the Principal owes to Agent shall be settled by a certified public auditor to be appointed by the Principal and the Agent, whose written decision shall be final and binding upon both parties.

Plaintiff does not deny that the agency agreement includes two arbitration provisions. Rather, Plaintiff argues that: (1) Articles 3(3) and 12 are invalid arbitration; (2) Defendant waived arbitration; and (3) if arbitration is warranted, the Court should direct the parties to arbitrate this matter before a certified public accountant pursuant to Article 3(3). The Court does not find Plaintiff's arguments compelling.

■ There is strong federal policy favoring arbitration. Section 2 of the Federal Arbitration Act ("FAA" or "Arbitration Act"), provides that an arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler–*

*Plymouth Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) (emphasis in original). Therefore, upon a finding that a matter is arbitrable, the court is compelled to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement," provided that the arbitration takes place within the jurisdiction of the court. 9 U.S.C. § 4.

The federal policy favoring arbitration also applies in international transactions and is reflected in the Convention on Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), 9 U.S.C. §§ 201–208 (1988).[4] The Convention provides that the signatory countries "shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences." Convention, Article II(1). The Convention also provides that a court in a signatory country "shall ... refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed." Convention, Article II(3). Unlike the geographical limitation contained in the FAA, a court acting under the Convention "may direct the arbitration to be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206.

■ In determining whether arbitration is warranted, Defendant asks the Court to apply the four-part test enunciated in *Euro– Mec Import, Inc. v. Pantrem & C., S.p.A.*, No. 92–2624, 1992 WL 350211 (E.D.Pa. Nov. 16, 1992). Under the *Euro–Mec Import* test, arbitration is appropriate if the following four questions are answered in the affirmative:

1. Is there an agreement to arbitrate?
2. Does agreement provide for arbitration in territory of signatory country?
3. Does agreement arise out of a legal relation that is considered commercial?
4. Is one of the parties not an American citizen?

■ The *Euro–Mec Import* questions are answered in the affirmative in the instant matter. First, there is a broad agreement to arbitrate "all disputes that arise from the operation of [the agency] agreement."[5] Second, the agency agreement provides for arbitration in Geneva, Switzerland; Switzerland is a signatory to the Convention. Third, the agreement arises out of an international commercial legal relationship. Fourth, SICIS is an Italian corporation.

■ However, before compelling arbitration, this Court must determine whether the arbitration provision is valid and enforceable. Plaintiff contends that Article 12 is unenforceable because it is vague and ambiguous. Specifically, Plaintiff indicates that the arbitration clause fails to identify the number of arbitrators and how they are to be selected. The Court notes that provisions in a contract providing for arbitration generally must be definite enough so that the parties have some idea as to what matters are referable to arbitration and how the arbitration is to proceed. *See Malone & Hyde, Inc. v. RTC Transportation, Inc.*, 515 So.2d 365, 366 (Fl. Dist.Ct.App.1987).

■ The parties' failure to include guidelines on the number of arbitrators or procedures on appointment of the arbitrators, however, is not fatal. § 5 of the FAA provides that if the arbitration agreement fails to adequately provide a method for appointing an arbitrator, the court is empowered to "designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had

---

4. Both the United States and Italy are signatories to the Convention.

5. As stated above, since this dispute is more than a "commissions dispute," Article 12 of the agency agreement is relevant to this inquiry.

been specifically named therein." Further, § 206, in pertinent part, provides that the court "may also appoint arbitrators in accordance with the provisions of the agreement." It has been held that § 206 does not prevent a court from naming an arbitrator if an arbitration agreement is silent on that issue. *See Jain v. de Mere*, 51 F.3d 686, 692 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 300, 133 L.Ed.2d 206 (1995).

■■■ In addition, Plaintiff argues that the arbitration clause is invalid because the agreement provides that Italian law shall govern any dispute. In *Williams v. Hardy*, 468 So.2d 429 (Fl.Dist.Ct.App.1985), the court held that a contractual provision requiring arbitration in New York according to New York law was not enforceable under the Florida Arbitration Act. However, this dispute involves interstate commerce and is governed by the FAA or the Convention. In a matter governed by the FAA, state law that is contrary to the FAA will not be enforced. Accordingly, the FAA supersedes the Florida Arbitration Code provision which deprives Florida courts of authority to enforce agreements to arbitrate under the law of other states. *Trojan Horse, Inc. v. Lakeside Games*, 526 So.2d 194 (Fl.Dist.Ct.App. 1988).

■■■ Plaintiff also argues that Defendant waived arbitration. Plaintiff attaches an undated letter in which a SICIS representative stated, "... so if you believe to be a creditor towards SICIS International S.r.L., we suggest to you to proceed by law." The Court does not agree with Plaintiff that this letter amounts to a waiver of the right to arbitrate.

Finally, Plaintiff argues that, if this Court deems arbitration is warranted, it should compel arbitration in Florida under Article 3(3). This Court concludes that Article 12 is applicable, the proper forum for the arbitration is Geneva, Switzerland.

### CONCLUSION

For the reasons set forth above, it is ORDERED AND ADJUDGED as follows:

1. Plaintiff's Motion for Default Judgment on the Issue of Liability and for Reservation of Jurisdiction to Determine Damages be, and the same is hereby, DENIED.

2. Defendant's Motion to Compel Arbitration and Stay Proceedings be, and the same is hereby, GRANTED. This action is STAYED and the parties are directed to submit these disputes, pursuant to Article 12 of the agency agreement, to arbitration in Geneva, Switzerland. Since the arbitration provision does not provide for the number of arbitrators, this Court directs that the arbitration proceed under a tripartite panel, consisting of two arbitrators and one umpire. The parties shall each appoint a party arbitrator; the arbitrators shall select an umpire. In the event that the parties cannot agree on the manner or time-frame in which to select the arbitrators, the parties are directed to make an application to the Court for selection of the panel.

3. Defendant's Motion for Reconsideration of State Court Order and Renewed Motion to Compel Arbitration be, and the same is hereby, GRANTED.

FURTHER ORDERED AND ADJUDGED that Plaintiff is entitled to an award of costs and attorney's fees incurred in filing its motion for default judgment. Plaintiff is directed to file a motion for costs and attorney's fees within fifteen (15) days of the date of this Order.

FURTHER ORDERED AND ADJUDGED that the Clerk of Court is directed to place this action in the CIVIL SUSPENSE FILE. All pending motions are DENIED AS MOOT.

DONE AND ORDERED.